The opinion of the Court was delivered by
Dunkin', Ch.
It is true that the bill prays an account of tolls collected, since December, 1848, by the defendants, but this is consequent only upon the adjudication which the Court is prayed to make, that the defendants are entitled to receive, and collect, for passage over the Augusta bridge, no more than one moiety of the tolls prescribed by the Georgia charter of 1833; and to this intent the complainants pray a writ of injunction, to restrain and prevent in future the defendants from exacting and receiving, for passage over the Augusta bridge, from the South-Carolina to the Georgia end thereof, more than one moiety of the tolls prescribed by the charter of 1833, and. from collecting any tolls whatever on the new bridge, which they are charged to have erected at Mill-street, or from allowing the same to be used, “ so that the same may be entirely and effectually closed and shut up.”
At the hearing, the counsel for the complainants declined to argue the question arising on the plea to the jurisdiction, and the Court could only infer that the positions assumed were those which the counsel for the defendants had discussed, and upon these the judgment of the Court was pronounced.
*73 It is now said, that it appears from the bill itself, that the defendants held property in the State of South-Carolina, an,d that it was intended to maintain the jurisdiction on that ground. It is by no means certain that any such averment is made in the bill. It is very certain it is not set forth as a ground upon which this Court should assume jurisdiction against the defendants, nor did the Court receive any intimation to that effect. The subject matter in controversy is the Augusta bridge, properly so called, and the newly erected bridge at Mill-street. The complainants rely on the Act of 1848, as vesting in them the bridge, and the exclusive right from Campbelltown Ferry above, to the Sand-bar Ferry below, Augusta, — by which Act (aver the complainants) they “ became invested, not merely with the franchise conferred thereby in respect to so much of the said bridge as is within the territorial limits of the State, but also with the full title, property and ownership in and to the material structure of that portion of the bridge.” In the narrative part of the bill it had been stated, that the abutment and landing of the bridge on the South-Carolina side of the river were upon parts of four lots of land in the town of Hamburg — -that Gaza-way B. Lamar, having a charter of the bridge from the State of South-Carolina, until 1848, and being also owner of these lots, on the 21st January, 1840, conveyed the charter and the lots to the defendants. The complainants then aver the re-charter to themselves in 1848, and thence insist on their exclusive right to restrain the defendants from interfering with their property or privileges. It may answer the purpose of an argument to say, that the defendants are averred to have property in South-Carolina ; but it has been, on another occasion, strenuously contended, that not only the franchise, but the structure of the bridge, including the abutments and landing, pass with the charter, and the proviso in the deed from Judge Earle, under whom defendants are alleged to derive title, was urged in support of the argument. What is then averred to be the property of the defendants within the State of South-Carolina, which is to give the Court cognizance of this cause ? Upon a strict examination, it may be they *74 have a title to so much of the four lots as is not occupied by the abutment of the bridge and the landing. Of course, that is not the subject matter of controversy, but must be admitted to be the undisputed property of the defendants. Can this give the Court jurisdiction so as to authorize the impleading of the absent defendants, and the adjudication of their rights upon the matters presented ? It is in accordance with the first principle of justice that no person shall be condemned until he has been heard. And, as a general rule, no Court should pass on the rights of those not within their jurisdiction. To this rule there are exceptions, or rather qualifications, equally well recognised; some arising from the provisions of the statute law, and others from the practice of Courts. Among the latter are proceedings in Admiralty, which act in rem, and whose proceedings are conclusive upon the subject matter within their jurisdiction. Courts of Common Law entertain jurisdiction against an absent defendant by proceedings in attachment, under the custom of London or by statute. But it is well settled that the judgment in attachment has no effect beyond the property attached. “ If those goods, credits and effects are insufficient to satisfy the judgment, and the creditor should sue an action on that judgment, in the State where defendant resides, to obtain satisfaction, he must fail; because the defendant was not personally amenable to the jurisdiction of the Court rendering the judgment.” Such is the language of Chief Justice Parsons, in Bissell vs. Briggs, (9 Mass. R. 468.) See also Story Confl. Laws, § 549. We have also an Act of Assembly which authorizes proceedings where one of several executors is absent from the State ; and the Act of 1823 gives a remedy in case of the absence of one of several parties to a joint contract. But both Acts provide, that the interests of the absent party shall not be affected. The attachment Acts do not extend to Courts of Equity. But it has been the practice, both in England and in this country, to entertain suits in relation to property within the jurisdiction, although some of the parties interested in the subject matter reside beyond the jurisdiction of the Court. Mr. Mitford says: “ A *75 suit may affect the rights of persons out of the jurisdiction of the Court, and consequently not compellable to appear in it. If they cannot be prevailed upon to make defence to the bill, yet? if there are other parties, the Court will, in some cases, proceed against those parties.” “ But if the absent parties are to be active in the performance of a decree, if they have rights wholly distinct from those of the other parties, the Court cannot proceed to a determination against them.” Mitf. PI. 33. This Court is in the familiar habit of entertaining proceedings in partition where a portion of the defendants are beyond the limits of the State. It has also, in' some instances, taken cognizance where the complainant has a plain legal demand against an absent defendant who has property in this State, but which, from its peculiar position, is not subject to the ordinary process of attachment. Such is the case of Kinloch & Phillips vs. Meyer, administrator, Spears’ Eq. 428, which was a proceeding against the administrator of an intestate and an absent distributee, to subject the interest of the latter to the payment of a debt; and so of the case of Bowden vs. Schatzell, Bail. Eq. 369. It cannot be supposed that in this case the complainants have a plain legal demand against the defendants, or any demand at law; much less is it averred that the property of the defendants in this State, whatever it may be, is not subject to a writ of attachment.
The complainants do not ask the aid of this Court to subject the defendants’ property in this State to the satisfaction of a claim, much less is it averred that such property is the subject matter of controversy. They claim certain exclusive rights to toll, &c. under the charter of 1848, and they ask the assistance of this Court in enforcing them against the absent defendants. As well might a bill be filecl in Georgia for a divorce against a defendant resident in Charleston, who happened to own a water lot in Augusta; or a Tennessean be impleaded in the Court of Equity of South-Carolina, for the specific performance of an agreement in relation to real estate in Chattanooga, because the complainant had been fortunate enough to find a bale of the defendant’s cotton in its transit through this State. There is *76 avowedly no precedent for the proceedings of the complainants in this case, and they are equally without authority from the general principles usually recognised in well regulated tribunals.
It is ordered and decreed that the appeal be dismissed.
JohnstoN, DargaN and Wardlaw, CC., concurred.

Appeal dismissed.